**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF SOUTH DAKOTA**

ROOM 211
FEDERAL BUILDING AND U.S. POST OFFICE
225 SOUTH PIERRE STREET
**PIERRE, SOUTH DAKOTA  57501-2463**

IRVIN N. HOYT
BANKRUPTCY JUDGE

TELEPHONE (605) 224-0560
FAX (605) 224-9020

May 15, 2006


John S. Lovald, Esq.
Attorney for Plaintiff-Trustee
Post Office Box 66
Pierre, South Dakota  57501

Richard F. Rahn, Esq.
Attorney for Defendant Walter Heien
4305 South Louise Avenue, # 101A
Sioux Falls, South Dakota  57106

Laura L. Kulm Ask, Esq.
Attorney for Defendants-Debtors
Post Office Box 966
Sioux Falls, South Dakota  57101-0966

Thomas M. Issenhuth, Esq.
Attorney for Defendant Lois J. Ackerman Davis
Post Office Box 28
Madison, South Dakota  57042-0028

    Subject: ***John S. Lovald, Trustee v. Walter Heien, et. al
(In re Herbert L. Hoffman and Marie A. Hoffman)***
Adv. No. 05-4076
Chapter 7; Bankr. No. 05-40950

Dear Counsel:

    The matter before the Court is Plaintiff-Trustee John S. Lovald's complaint under 11 U.S.C. § 548 to avoid a transfer of real estate once belonging to Defendants-Debtors Herbert L. Hoffman, Jr. and Marie A. Hoffman.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(H).  This letter decision and accompanying order shall constitute the Court's findings and conclusions under Fed.R.Bankr.P. 7052.  As set forth below, judgment will be entered for Plaintiff-Trustee Lovald.

    **Summary**.  Herbert L. Hoffman, Jr. and Marie A. Hoffman were the owners of real property legally described as:

Re: *Lovald v. Heien*
May 12, 2006
Page 2

> Tract C of Lake Brant Skunk Creek Estates Addition in Government Lots One and Two (1 & 2), Section Nine (9), Township One Hundred Five (105) North, Range Fifty One (51), West of the 5th P.M., Lake County, South Dakota, and Tract E of the Plat of Lake Brant Skunk Creek Estates Second Addition in Government Lots One and Two (1 & 2), Section Nine(9), Township One Hundred Five (105) North, Range Fifty One (51), West of the 5th P.M., Lake County, South Dakota

("lake property").  By warranty deed dated April 29, 2005, the Hoffmans sold the lake property to Walter E. Heien, Trustee of the Walter E. Heien Revocable Living Trust ("Heien"), for $70,500.[1] The deed was recorded with the Lake County Register of Deeds on May 2, 2005.

On July 7, 2005, the Hoffmans ("Debtors") filed for relief under chapter 7 of the bankruptcy code.  By warranty deed dated August 8, 2005, Heien sold the real estate to Kenneth H. Davis and Debtor Herbert Hoffman's mother, Lois J. Ackerman-Davis ("Ackerman-Davis"), for $75,565.24.  The deed was recorded with the Lake County Register of Deeds on August 29, 2005.

On August 25, 2005, Trustee John S. Lovald ("Trustee Lovald") commenced the instant adversary proceeding by filing a complaint in which he named Heien and Debtors as defendants.  By his complaint, Trustee Lovald asked the Court to avoid the transfer of the lake property to Heien as a fraudulent transfer.  On September 26, 2005, Heien and Debtors filed separate, but virtually identical, answers to Trustee Lovald's complaint, denying Trustee Lovald's allegations of fraud.

A trial was held on January 11, 2006.[2]  Following the trial, the parties submitted simultaneous briefs and reply briefs in lieu of closing arguments.  The matter was taken under advisement.

**Discussion.**  Section 548(a) of the bankruptcy code allows a

---

[1] Heien is the father of Craig Heien, Debtors' insurance agent.

[2] At the trial, the parties agreed Ackerman-Davis could be added as a party defendant.

Re: *Lovald v. Heien*
May 12, 2006
Page 3

chapter 7 trustee to avoid transfers infected by either actual or constructive fraud. *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 535 (1994). The trustee must show each element of a voidable transfer by a preponderance of the evidence. *See Sherman v. Third National Bank* (*In re Sherman*), 67 F.3d 1348, 1353 (8th Cir. 1995). If the trustee establishes a *prima facie* case, it is then incumbent upon the defendant to produce evidence to rebut the trustee's proof. *Pension Transfer Corp. v. Beneficiaries under the Third Amendment to Fruehauf Trailer Corporation Retirement Plan No. 003* (*In re Fruehauf Trailer Corp.*), 444 F. 3d 203, 217 (3rd Cir. 2006). *See also Acequia, Inc. v. Clinton* (*In re Acequia, Inc.*), 34 F.3d 800, 806 (9th Cir. 1994); *First National Bank in Anoka v. Minnesota Utility Contracting, Inc.* (*In re Minnesota Utility Contracting, Inc.*), 110 B.R. 414, 418-20 (D. Minn. 1990).

Section 548(a)(1)(B) specifically governs the avoidance of a constructively fraudulent transfer. Under this provision, the trustee must establish that: (1) the debtor had an interest in property; (2) the debtor transferred that interest in property within one year of the date the debtor filed his petition; (3) the debtor was insolvent at the time of the transfer, the debtor became insolvent because of the transfer, or the debtor intended to incur or believed he would incur debts beyond his ability to pay; and (4) the debtor received less than a reasonably equivalent value for the transfer. *See BFP v. Resolution Trust*, 511 U.S. at 535.

Courts use a three-part analysis to determine whether the debtor received something reasonably equivalent in value in exchange for the transfer: (1) Was value given? (2) Was the value given in exchange for the transfer by the debtor? (3) Was the value reasonably equivalent to what the debtor transferred? *Meeks v. Don Howard Charitable Remainder Trust* (*In re Southern Health Care of Arkansas*), 309 B.R. 314, 319 (B.A.P. 8th Cir. 2004); *Pummill v. Greensfelder, Hemker & Gale* (*In re Richards & Conover Steel Co.*), 267 B.R. 602, 612 (B.A.P. 8th Cir. 2001). "Value" means property or satisfaction or securing of a present or antecedent debt of the debtor. 11 U.S.C. § 548(d)(2)(A).

> The concept of reasonably equivalent value is a means of determining if the debtor received a fair exchange in the marketplace for the goods transferred. Considering all the factors bearing on the sale, did the debtor receive fair market value for the property.

*Jacoway v. Anderson* (*In re Ozark Restaurant Equipment Co.*), 850

Re: *Lovald v. Heien*
May 12, 2006
Page 4


F.2d 342, 344-45 (8th Cir. 1988) (quoted in *Williams v. Marlar* (*In re Marlar*), 267 F.3d 749, 756 (8th Cir. 2001); *Pummill*, 267 B.R. at 612.

There is no dispute Debtors had an interest in the lake property and they transferred that interest within one year of the date they filed their petition for relief under chapter 7. There likewise appears to be no dispute Debtors were insolvent on the date they transferred the lake property. *See* 11 U.S.C. § 101(32). Debtor Marie Hoffman admitted that at the time of the sale, Debtors did not have sufficient assets or means to pay their creditors; they were contemplating filing bankruptcy; and they had already been in contact with the Stuart, Gerry & Schlimgen law firm. She further testified Debtors sold the lake property because they "couldn't keep up with the finances." Finally, she testified Debtors filed bankruptcy because they "couldn't keep up with [their] debts." Her testimony is consistent with Debtors' schedules, which show that on July 7, 2006, Debtors had liabilities totaling $216,478.80 and assets totaling only $164,688.00 (which included their exempt property). Nothing suggested any change in Debtors' circumstances that would make their schedules unrepresentative of their financial condition at the time of the sale.

That leaves only the question of whether Debtors received less than a reasonably equivalent value for the transfer of the lake property on April 29, 2005. None of the parties offered direct evidence of the fair market value of the lake property on that date. However, the parties did offer sufficient evidence for the Court to determine that value.

First, Debtors introduced a "Comparative Market Analysis" ("market analysis") prepared for them by realtor Terry Arshem in July 2004.[3] According to the market analysis, the lake property

---

[3] Debtor Marie Hoffman testified Debtors "had a market appraisal done by a professional realtor," but did not say when it had been requested or completed. The copy of the market analysis Debtors introduced was missing three pages (the first, third, and fourth). The second page bears a handwritten date of July 19, 2004, but no one was able to establish with any certainty who wrote that date on the page. The Court instructed Debtors' attorney to provide a complete copy, which she did following the trial. The third and fourth pages are dated "07/15/2004."

Re: *Lovald v. Heien*
May 12, 2006
Page 5

was worth $80,000 in July 2004. Debtor Marie Hoffman testified Debtors relied on that document in setting the sale price for the lake property. Second, Mark Nelson ("Nelson"), the owner of real property adjoining the lake property, testified that on July 19, 2005 he offered to buy the lake property from Heien for $80,000. Third, Trustee Lovald introduced a written offer sent to him on October 11, 2005 by Attorney David J. Jencks on behalf of Nelson and Nelson's wife to purchase the lake property for $90,000. From this, the Court concludes the lake property was worth between $80,000 and $90,000 on April 29, 2005, the date of the sale to Heien.

Inasmuch as $70,500 is not "reasonably equivalent" to $80,000 to $90,000, the Court concludes Trustee Lovald made a *prima facie* case for avoiding the sale to Heien under § 548(a)(1)(B). The burden of producing evidence to rebut Trustee Lovald's *prima facie* case thus shifted to Defendants. Defendants did not meet that burden.

As noted above, Debtor Marie Hoffman testified Debtors relied on the market analysis prepared by realtor Terry Arshem in setting the sale price for the lake property.[4] She explained that from the $80,000 value assigned to the lake property in the market analysis, Debtors first deducted "realtor fees and all the fees that would be incurred" in selling the lake property and then made a further downward adjustment because of problems they have had with their neighbor Nelson.[5] This resulted in a total reduction of $9,500 ($80,000 value less $70,500 asking price).

There are several problems with Debtors' explanation for how they arrived at the sale price for the lake property. First, Debtors did not specify what portion of the $9,500 reduction they attributed to realtor and other fees and what portion they

---

[4] Nothing in the record suggests Debtors attempted to obtain a more contemporaneous appraisal of the lake property.

[5] Debtor Marie Hoffman testified regarding an incident in which Nelson allegedly "came over [to the lake property] and started yelling things and hassling [Debtors] and embarrassing [Debtors] and causing all kinds of ruckus." In addition, Trustee Lovald introduced a letter to him dated October 26, 2005, in which Ackerman-Davis outlined a number of other problems Debtors and others have had with Nelson.

Re: *Lovald v. Heien*
May 12, 2006
Page 6

attributed to their alleged problems with Nelson. None of the defendants offered evidence of usual and customary realtor fees and other sale costs to support Debtors' calculations. The Court is thus unable to determine whether either portion of the reduction – and thus the overall reduction – was reasonable.

Second, Debtors did not test the market to find out whether their rationale regarding the deductions for the realtor and other fees and their alleged problems with Nelson was sound. Debtor Marie Hoffman testified Debtors did not list the lake property with a realtor, place a "For Sale" sign on it, or otherwise advertise it for sale; Debtors contacted only one unnamed individual, other than Heien, about purchasing the lake property; and Debtors did not contact Nelson, because they "would never sell [the lake property] to him."[6] Debtors instead sold the lake property by private sale to an accommodating buyer, who permitted Debtors and Debtor Herbert Hoffman's mother and her husband to continue to use the lake property following the sale, and who re-sold the lake property by another private sale to Debtor Herbert Hoffman's mother and her husband barely three months later at what Heien testified was a loss.

Third, Debtors' decision to reduce the sale price for the lake property by the full amount of the anticipated realtor and other fees they would not incur in a private sale was not justified. Defendants offered no evidence that any potential buyer insisted on – or even requested – such a reduction. They likewise offered no explanation why Heien should receive the entire benefit of those savings. *Cf. In re Joel A. Humpal*, Bankr. No. 05-40048, slip op. at 5 (Bankr. D.S.D. Aug. 11, 2005).

Finally, the Court is not persuaded Debtors needed to make any downward adjustment to the sale price for the lake property because of their alleged problems with a neighbor. Defendants again offered no evidence that any potential buyer insisted on – or even

---

[6] Debtors' absolute refusal to consider selling the lake property to Nelson is troublesome. A sale to Nelson would have obviated any perceived need to discount the sale price based upon Debtors' alleged problems with him. Moreover, by offering to buy the lake property from Heien for $80,000 less than three months after the sale to Heien, Nelson did not appear to have had any expectation of sharing in the savings in realtor and other fees resulting from a private sale.

Re: *Lovald v. Heien*
May 12, 2006
Page 7

requested – such a downward adjustment. Debtor Marie Hoffman testified only that Debtors "had" to disclose the alleged problems to potential buyers. Defendants did not offer any legal authority that mandated such a disclosure. However, even assuming Debtors had an obligation to disclose alleged "neighbor problems" to a potential buyer, in deciding on the sale price, the only way for Debtors to quantify the effect of those alleged problems on the lake property's value would have been to have the lake property appraised. Debtors did not obtain a current appraisal or even have the market analysis updated. Thus, their decision to make this downward adjustment in the sale price assumed a market value factor that may not have existed at all.

A judgment avoiding the transfer of the lake property to Heien will be entered. If the parties are unable to reach an agreement for the surrender of the property to Trustee Lovald or the payment of its value to him, Trustee Lovald will need to commence an appropriate adversary proceeding under 11 U.S.C. § 550(a).

Sincerely,

Irvin N. Hoyt
Bankruptcy Judge

INH:sh

cc: adversary file (docket original; serve parties in interest)

**NOTICE OF ENTRY**
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered
on the date shown above.

Charles L. Nail, Jr.
Clerk, U.S. Bankruptcy Court
District of South Dakota